UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

In re:

PAUL J. DIPIETRO

       Debtor.
------------------------------------------------------------X

HUDSON VALLEY FEDERAL CREDIT UNION,

       Appellant,

    -v-

PAUL J. DIPIETRO,

       Appellee.

No. 17-CV-9423 (KMK)

OPINION & ORDER

Appearances:

Francis J. O'Reilly, Esq.
Carmel, NY
*Counsel for Debtor-Appellee*

Richard Russell DuVall, Esq.
McCabe & Mack LLP
Poughkeepsie, NY
*Counsel for Creditor-Appellant*

KENNETH M. KARAS, District Judge:

  Hudson Valley Federal Credit Union ("Hudson Valley") appeals from the November 7, 2017 Order of the Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") holding it in contempt for violating an automatic stay in a bankruptcy proceeding and awarding actual and punitive damages. For the reasons set forth below, the Order of the Bankruptcy Court is affirmed in part and reversed in part.

I. Factual and Procedural Background

Paul DiPietro ("DiPietro") maintains two bank accounts and a car lease with Hudson Valley. (*See* Br. for Debtor-Appellee ("DiPietro Br.") 2 (Dkt. No. 7).) On June 20, 2017, Westchester Medical Center ("WMC"), a judgment creditor for a debt owed by DiPietro, sent a restraining notice to Hudson Valley. (A.R. 6.)[1] Hudson Valley maintains that its established policy is "to discontinue certain services . . . when a member causes a loss to" it. (Br. for Creditor-Appellant ("Hudson Valley Br.") 4 (Dkt. No. 5).) Therefore, Hudson Valley, acting pursuant to this policy and WMC's notice, suspended DiPietro's online account privileges and access to his debit card. (*Id.*)

On July 13, 2017, DiPietro filed a Chapter 7 bankruptcy petition. (A.R. 8.) Hudson Valley received written notice of the filing on July 17, 2017. (A.R. 10.) On July 26, 2017, WMC sent Hudson Valley a letter releasing it from its restraining notice. (A.R. 11.)

What happened next is disputed. Hudson Valley maintains that, on July 26, 2017, following receipt of the letter from WMC, it restored DiPietro's online account privileges and debit card access. (Hudson Valley Br. 3–4.) DiPietro contends, however, that he did not regain such access until August 3, 2017. (*See* Debtor's Affidavit in Reply ("DiPietro Reply Aff.") ¶¶ 3, 24 (A.R. 65–68).) DiPietro states that he "checked [his] account several times between July 26, 2017 and August 1, 2017 online and had no access." (*Id.* ¶ 8.) DiPietro further states that he visited Hudson Valley's local branch in Carmel, New York on July 27, 2017, where he was informed that his "accounts were still restrained." (*Id.* ¶ 9.) DiPietro also states that he spoke to a person in Hudson Valley's bankruptcy department, who told him that his "account was still

---

[1] Citations to "A.R." are citations to the record on appeal, filed as an appendix to Hudson Valley's opening brief at Dkt. No. 5.

restrained" because of the bankruptcy filing, that "there was a $90.00 processing fee charged to [his] savings account due to [his] bankruptcy," and that his "account would be released." (*Id.* ¶¶ 13–14; *see also* A.R. 39–42 (transcript of phone call).) And DiPietro states that, on August 1, 2017, he visited Hudson Valley's Carmel branch for a second time, where he was told that his "accounts were still restrained" and that his "checking account had a negative balance." (DiPietro Reply Aff. ¶ 15.)

On August 2, 2017, DiPietro's counsel filed a motion seeking to hold Hudson Valley in contempt for violating the automatic stay. (A.R. 2.) On August 3, 2017, DiPietro visited Hudson Valley's Carmel branch for a third time, "filled out and signed a pre-printed form requesting resumption of services," and "deposited money into his checking account to cover a negative balance caused by a restraint fee of $90" imposed by Hudson Valley. (DiPietro Br. 3.) On August 4, 2017, DiPietro called Hudson Valley regarding the status of his account. (A.R. 45–56 (transcript of call).) He was informed that his online account privileges had been restored, (A.R. 49), and that he would need to be issued a new debit card, (A.R. 54).

The Bankruptcy Court held a hearing on DiPietro's motion for contempt on October 31, 2017. (*See generally* Hr'g Tr. (Oct. 31, 2017) (A.R. 69–81).) On November 7, 2017, the Bankruptcy Court entered an order holding Hudson Valley in contempt and assessing an award of actual and punitive damages. (A.R. 82–83.) This appeal followed. (A.R. 1.)

## II. Discussion

A. Standard of Review

The Court has jurisdiction to review this appeal pursuant to 28 U.S.C. § 158(a)(1). *See Dishi & Sons v. Bay Condos LLC*, 510 B.R. 696, 700 (S.D.N.Y. 2014). A district court reviews a bankruptcy court's conclusions of law de novo, its discretionary decisions for abuse of

3

discretion, and its findings of fact for clear error. *See In re Bayshore Wire Prods. Corp.*, 209 F.3d 100, 103 (2d Cir. 2000). "A bankruptcy court abuses its discretion when it bases its decision on an erroneous view of the law or clearly erroneous factual findings, or where it commits a clear error of judgment." *Taub v. Adams*, No. 10-CV-2600 and No. 10-CV-2611, 2010 WL 8961434, at *4 (E.D.N.Y. Aug. 31, 2010) (citing *In re Blaise*, 219 B.R. 946, 950 (2d Cir. 1998)). Under the clear error standard, "[t]here is a strong presumption in favor of a trial court's findings of fact if supported by substantial evidence," and a reviewing court will not upset a factual finding "unless [it is] left with the definite and firm conviction that a mistake has been made." *Travellers Int'l A.G. v. Trans World Airlines, Inc.*, 41 F.3d 1570, 1574 (2d Cir. 1994) (first alteration in original) (quotation marks omitted). "Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Id.* at 1574–75 (citation and quotation marks omitted); *see also UFCW Local One Pension Fund v. Enivel Props., LLC*, 791 F.3d 369, 372 (2d Cir. 2015) (same).

    B.  Analysis

        1.  Violation of Automatic Stay

"Section 362(a) of the Bankruptcy Code provides that the filing of a bankruptcy petition 'operates as a stay, applicable to all entities, of' most actions against the debtor, the debtor's property, and property of the bankruptcy estate." *In re Weil*, No. 12-CV-462, 2013 WL 1798898, at *2 (D. Conn. Apr. 29, 2013) (quoting 11 U.S.C. § 362(a)). This "automatic stay" provision "is one of the fundamental debtor protections provided by the bankruptcy laws, designed to relieve the financial pressures that drove [the] debtors into bankruptcy" by "afford[ing] [the] debtors a breathing spell from the collection process and enabl[ing] them to attempt a repayment or reorganization plan to satisfy existing debt." *Eastern Refractories Co. v.*

4

*Forty Eight Insulations Inc.*, 157 F.3d 169, 172 (2d Cir. 1998) (citations, alteration, and quotation marks omitted). The provision prohibits, among other things, "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." 11 U.S.C. § 362(a)(3).

An "individual injured by any willful violation of" the automatic stay provision "shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages." *Id.* § 362(k)(1). A "willful" violation is "any deliberate act taken in violation of a stay, which the violator knows to be in existence." *In re Crysen/Montenay Energy Co.*, 902 F.2d 1098, 1105 (2d Cir.1990). "In other words, specific intent to violate the stay is not required; instead, general intent in taking actions which have the effect of violating the automatic stay is sufficient to warrant damages." *In re Sturman*, No. 10-CV-6725, 2011 WL 4472412, at *2 (S.D.N.Y. Sept. 27, 2011) (citation and quotation marks omitted).

Here, the Bankruptcy Court concluded that Hudson Valley's eighteen-day-long restraint of DiPietro's access to his debit card and to his online account services — between July 17, 2017, when Hudson Valley received notice of DiPietro's bankruptcy filing, and August 3, 2017, when Hudson Valley restored DiPietro's access — violated the automatic stay. (*See* Hr'g Tr. 3, 7–8.) It found that:

> There can be no doubt that forcing a debtor to go to a branch to access funds that should be readily available to him on line or through an ATM or debit purchase is about a[s] harsh [a] financial punishment [as] is available in this modern age. The world is no longer amenable to waiting for payments while people go to the branch for money. It is no longer 1988.

(*Id.* at 8.) The Bankruptcy Court further found that there were "no reasons why the result of this case should be any different from that" in *In re Weber*, 719 F.3d 72 (2d Cir. 2013), in which the Second Circuit held that a creditor violated an automatic stay when it decided, having received

notice of the debtor's bankruptcy filing, to "keep[] custody of the [debtor's] vehicle and refus[ed] [the debtor] access to or use of it." *Id.* at 79. The Bankruptcy Court thus concluded that, like the creditor in *Weber*, Hudson Valley "exercise[d] control over property of the [bankruptcy] estate," as prohibited by § 362(a)(3), when it "clearly prohibit[ed] [DiPietro's] beneficial use of an asset, the monies in his bank account[,] by turning off his debit card." (Hr'g Tr. 9–10 (citing *Weber* and *In re Weidenbenner*, 521 B.R. 74, 79 (Bankr. S.D.N.Y. 2014)).)

Hudson Valley argues that *Weber* and *Weidenbenner* are distinguishable. In its view, "it was not [Hudson Valley] that placed the freeze on [DiPietro's] account, . . . [but] the judgment creditor, WMC." (Hudson Valley Br. 8.) That is, once Hudson Valley received WMC's restraint notice, (*see* A.R. 6), it followed its "established policy" and suspended DiPietro's online account privileges and debit card access, (Hudson Valley Br. 9). And once "the WMC restraint was lifted" on July 26, 2017, (*see* A.R. 11), DiPietro regained "access to all the monies in both of his accounts," (Hudson Valley Br. 8). Moreover, Hudson Valley argues, it "did not attempt to condition the restoration of [DiPietro's] privileges on receiving anything in return" and "did not, at any point, refuse to turn over [DiPietro's] property." (*Id.*; *see also id.* at 14 ("This is not a case where . . . [Hudson Valley] completely refused [DiPietro] access to property of the [bankruptcy] estate.").) To the contrary, Hudson Valley contends, it "was co-operative and helpful [to DiPietro] and not at all geared towards attempting to collect a debt." (*Id.* at 9.)

Whether a party violated an automatic stay is a matter of law and is reviewed de novo. *See In re Adomah*, 368 B.R. 134, 137 (S.D.N.Y. 2007). The Court agrees with the Bankruptcy Court that Hudson Valley violated the automatic stay. Hudson Valley's argument that WMC was the true party restraining DiPietro's accounts is unavailing. Not only does this argument fail to account for the period between July 26, 2017 and August 3, 2017 — after WMC released the

6

restraints on DiPietro's accounts but before Hudson Valley restored DiPietro's online and debit card access — but it ignores that DiPietro's account access was restricted via operation of Hudson Valley's *own* policy, not some (unidentified) WMC policy. Further, Hudson Valley's argument that it did not explicitly "refuse" to free the restraints on DiPietro's accounts or "condition" the freeing of the restraints on the payment of fees is unpersuasive, for that is not the standard. The *Weidenbrenner* case, cited by the Bankruptcy Court, is instructive. There, the creditor placed a freeze on the debtor's bank accounts after the debtor filed for bankruptcy; the bankruptcy court found that it "cannot think of a better example of [exercising] 'control over property of the estate,'" as prohibited by 11 U.S.C. § 362(a)(3), and held that the creditor's action violated the automatic stay. *Weidenbrenner*, 521 B.R. at 79–80. Similarly, Hudson Valley here restrained DiPietro's online banking privileges and debit card access for some eighteen days after it received notice from DiPietro of his bankruptcy filing, and some nine days after it received notice from WMC that its restraints on DiPietro were lifted. As the Bankruptcy Court noted, online banking and the use of debit cards are "primary" modern banking services: "[I]t is rare for any person in bankruptcy or not to step foot into a branch or a bank. . . . [F]orcing a debtor to go to a branch to access funds that should be readily available to him on line or through an ATM or debit purchase is about a[s] harsh financial punishment that is available in this modern age." (Hr'g Tr. 7–8.)

Hudson Valley's citation to *Brown v. Pa. State Empls. Credit Union*, 851 F.2d 81 (3d Cir. 1988) is unpersuasive. (Hudson Valley Br. 10.) First, the case is distinguishable, as it involved a creditor "inform[ing] [the] debtor of its policy" that it would "deny future services" to the debtor unless the debtor reaffirmed all pre-petition debts, and not, as here, the actual restriction of current services. *Brown*, 851 F.2d at 82, 85. Second, as the Bankruptcy Court found, "[t]he

7

world has changed dramatically since" 1988, as online banking and debit card access "have become primary over the course of the last 29 years. . . . The world is no longer amenable to waiting for payments while people go to the branch for money. It is no longer 1988." (Hr'g Tr. 7–8.) Finally, even if not distinguishable and superseded by events, the case is not binding on this Court.[2]

---

[2] Hudson Valley's citations to out-of-district bankruptcy court cases in accord with *Brown* are also unpersuasive. (*See* Hudson Valley Br. 10–14 (citing *In re Spearman*, No. 16-30772, 2017 WL 943918 (Bankr. W.D. Ky. Mar. 9, 2017); *In re Rolanti*, No. 12-14189, 2015 WL 1576275 (Bankr. D. Mass. Apr. 2, 2015); *In re Jasper*, 325 B.R. 50 (Bankr. D. Me. 2005); *In re Arnold*, 206 B.R. 560 (Bankr. N.D. Ala. 1997); *In re Bobbitt*, 174 B.R. 548 (Bankr. N.D. Cal. 1993); and *In re Henry*, 129 B.R. 75 (Bankr. E.D. Va. 1991)).)

The court in *Spearman* held that it could not "characterize restricting [e]lectronic [banking] [p]rivileges as equating to an attempt to collect a debt." *Spearman*, 2017 WL 943918, at *5. But this case does not involve an attempt to collect a debt, which is prohibited under 11 U.S.C. § 362(a)(6), but an act "to exercise control over property of the estate, which is prohibited by the separate provision of 11 U.S.C. §362(a)(3).

Similarly, the court in *Rolanti* did not consider whether a violation of § 362(a)(3) had occurred; rather, it focused its analysis on the alleged violation of the discharge injunction under 11 U.S.C. § 524, an issue not present here. *Rolanti*, 2015 WL 1576275, at *3–5.

The court in *Jasper* held that, "[i]n the absence of any evidence of a contractual relationship," the creditor's "termination of the [debtors'] membership benefits did not violate the stay." *Jasper*, 325 B.R. at 55. It is unclear how that case applies here, as Hudson Valley does not argue that it did not have a contractual relationship with DiPietro.

The court in *Arnold* held that "the mere cancellation of a debtor's credit union membership . . . does not violate the automatic stay of § 362(a)(6) or the discharge injunction of § 524(a) as an act to collect a dischargeable or discharged debt." *Arnold*, 206 B.R. at 564 n.3. But, as noted, this case does not involve § 362(a)(6) or § 524. Further, that case, like *Brown*, is over 20 years old, and Hudson Valley fails to make any argument responding to the Bankruptcy Court's finding, (Hr'g Tr. 7–8), that such cases are not meaningfully applicable in the context of modern banking.

The court in *Henry* dealt with a credit union's policy of cancelling debtors' memberships upon entering bankruptcy. *Henry*, 129 B.R. at 76. That factual scenario is not present here. Again, the allegation is that Hudson Valley "exercise[d] control over the property of the estate," in violation of § 362(a)(3), and not that it refused to further deal with DiPietro. Further, that case, like *Brown*, is nearly 30 years old, and Appellant makes no argument as to why the case still applies in the modern banking context.

Finally, the court in *Bobbitt* held that a creditor did not violate § 362(a)(3) when the (disputed) facts indicated that the creditor "refus[ed]" the debtor's in-person "request to withdraw money" and further informed the debtor that her "account was indefinitely frozen and that she could not make a withdrawal." *Bobbitt*, 174 B.R. at 555. There, however, the court

Hudson Valley thus presents no reason to disturb the conclusion of the Bankruptcy Court. The record clearly shows that Hudson Valley took actions to "exercise control over property of the estate." 11 U.S.C. § 362(a)(3). Those actions — restraining DiPietro's online account privileges and debit card access — did in fact exercise control, as DiPietro was prevented from remotely accessing his account and was thus forced to repeatedly call Hudson Valley and visit its branches in person to remedy the problem. Even if Hudson Valley did not specifically intend to violate the automatic stay, it maintained the restraints on DiPietro's accounts knowing that he had filed for bankruptcy, and indeed maintained those restraints after receiving notice from WMC to free DiPietro's accounts. It thus acted "willfully," with "general intent in taking actions which ha[d] the effect of violating the automatic stay." *Sturman*, 2011 WL 4472412, at *2; *see also Crysen*, 902 F.2d at 1105 (holding that a "willful" violation is "any deliberate act taken in violation of a stay, which the violator knows to be in existence"). The Bankruptcy Court therefore did not err when it held DiPietro in contempt for violation of the automatic stay.

### 2. Actual Damages

An individual "injured by any willful violation of" the automatic stay provision "*shall* recover actual damages, including costs and attorneys' fees." 11 U.S.C. § 362(k)(1) (emphasis added). "[T]he party seeking damages for a violation of the automatic stay bears the burden of proving that damages were actually incurred." *Sturman*, 2011 WL 4472412, at *3. "Where no injury results from the violation of the automatic stay, an award of damages is clearly inappropriate." *Id.* (citations omitted). "Similarly, although [11 U.S.C. §] 362(k)(l) specifically

---

based its holding on its conclusion that "personalities and personal styles prevented effective communication," and that "this type of miscommunication is not the type of conduct violative of the automatic stay." *Id.* Hudson Valley does not allege here any such "miscommunication" or case of clashing personalities.

9

provides for the inclusion of costs and attorneys' fees among actual damages, many courts have expressed reluctance to award fees and costs in the absence of other actual damages for fear of encouraging an excessively litigious approach to minor stay violations. *Id.* (citation and quotation marks omitted). Finally, "[a] district court reviews the bankruptcy court's determinations regarding attorneys' fees . . . for an abuse of discretion." *In re Heilpern*, No. 16-CV-7854, 2018 WL 4907587, at *2 (S.D.N.Y. Sept. 27, 2018) (citing *Bayshore*, 209 F.3d at 103).

Hudson Valley argues that DiPietro has failed to sustain his burden of showing actual damages. (Hudson Valley Br. 16–17.) The Court agrees. Although the Bankruptcy Court considered at length the qualitative burden on DiPietro in being prohibited from remotely using his bank account over the course of over three weeks, (*see* Hr'g Tr. 7–10), it did not consider whether DiPietro had submitted evidence of actual damages, (*see id.* at 10–12). Moreover, DiPietro, in his briefing before this Court, makes no mention of actual damages incurred. This is a case, then, in which DiPietro "has not shown that []he suffered any loss as a result of [Hudson Valley's] conduct." *In re Froman*, 566 B.R. 641, 656 (S.D.N.Y. 2017). Rather, "[a]ny alleged damages are . . . purely speculative and unquantifiable." *Id.*[3]

Despite not having found actual damages, the Bankruptcy Court awarded DiPietro's counsel "$4,407.89 of legal fees and expenses in enforcing the automatic stay." (A.R. 82.) This amount, to be sure, is supported by the itemized declaration of fees submitted by DiPietro's counsel. (A.R. 86–89.) But as DiPietro's counsel concedes, these "fees [were] incurred *solely* in

---

[3] The Court notes that it appears Hudson Valley levied on DiPietro a $90 "legal processing" fee when it received the restraint notice from WMC, (*see* A.R. 26 ¶ 14; A.R. 66 ¶ 13), and two $30 overdraft fees, which were later reversed, (*see* A.R. 4 ¶ 11; *see also* A.R. 41, 72). The Bankruptcy Court did not consider whether any of these fees amounted to actual damages.

10

prosecuting a motion to hold [Hudson Valley] in contempt of court." (A.R. 84 (emphasis added).) Indeed, the record shows that DiPietro's counsel began work on the case on August 2, 2017, by drafting the contempt motion in this case and serving it on Hudson Valley. (A.R. 2 (contempt motion); A.R. 86 (billing records).) The Court's "concern about the propriety of awarding fees in the absence of other actual damages is particularly compelling where, as here, the only fees and costs at issue were expended . . . in bringing a motion for damages under § 362." *Sturman*, 2011 WL 4472412, at *4; *see also In re Ampal–Am. Israel Corp.*, 502 B.R. 361, 374 (Bankr. S.D.N.Y. 2013) (declining an award of attorneys' fees where the debtors "failed . . . to identify any damages proximately caused by the stay violation other than their attorneys' fees and legal expenses incurred in responding to the [creditor's letter] and prosecuting this motion"). Accordingly, the Bankruptcy Court's award of attorneys' fees was, on this record, an abuse of discretion.

### 3. Punitive Damages

The Bankruptcy Code provides for an award of punitive damages "in appropriate circumstances." 11 U.S.C. § 362(k)(1). "Punitive damages . . . are only appropriate where the stay violation was conducted in bad faith, with malice, or in a particularly egregious manner." *Froman*, 566 B.R. at 656 (citation and quotation marks omitted)); *see also Crysen*, 902 F.2d at 1105 (finding punitive damages appropriate where there is "maliciousness or bad faith"). This standard is strict, for "even callous disregard is an insufficient basis upon which to award punitive damages." *Adomah*, 368 B.R. at 139 (citation omitted). "Before imposing punitive damages, therefore, a bankruptcy court must find as fact that a creditor acted with malice or in bad faith in violating a stay." *In re Crawford*, 476 B.R. 83, 87 (S.D.N.Y. 2012) (citation omitted). "A district court reviews the bankruptcy court's . . . decisions to impose sanctions for

11

an abuse of discretion." *Heilpern*, 2018 WL 4907587, at *2 (citing *Bayshore*, 209 F.3d at 103); *see also Crawford*, 476 B.R. at 86 ("Punitive damages awards are reviewed for abuse of discretion.").

Here, the Bankruptcy Court awarded punitive damages in the amount of $500 per day for eighteen days — from July 17, 2017, the date of DiPietro's bankruptcy filing, until August 3, 2017, the date DiPietro's account access was fully restored — for a total of $9,000. (A.R. 82–83; *see also* Hr'g Tr. 10–12.) Hudson Valley asserts this award was improper because the "record is entirely bereft of any appearance of ulterior motives," because the "acts of restricting debit card and electronic access were done automatically pursuant to pre-established policy," and because the "record does not suggest that [DiPietro] was threatened or coerced." (Hudson Valley Br. 18.) The Court agrees. Although the Bankruptcy Court stated that "[t]his is unconscionable to me and the transcripts are worse," (Hr'g Tr. 12), it did not further explain what, specifically, in the record or transcripts indicated that Hudson Valley acted maliciously or in bad faith. Even though Hudson Valley violated the automatic stay, and even if that violation demonstrated a "callous disregard" for the law, *Sturman*, 2011 WL 4472412, at *5, that is insufficient, absent a finding of maliciousness or bad faith not present here, to award punitive damages. Accordingly, the Bankruptcy Court's punitive damages award was, on this record, an abuse of discretion.

## III. Conclusion

For the foregoing reasons, the order of the Bankruptcy Court is affirmed in part and reversed in part. The case is remanded to the Bankruptcy Court for further proceedings to determine the existence and amount of actual and punitive damages.

SO ORDERED.

Dated: February 5, 2019
       White Plains, New York

_____
KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE